902 F.2d 1568
 53 Empl. Prac. Dec. P 39,954
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lonnie R. ALSUP, Plaintiff-Appellant,
Washington Brown, Sr.; Willie Brown, Jr.; Robert Cantrell;
Jeffrey E. Clint; Charles Foster; William Garcia;
Sylvester M. Gould, Sr.; Charles Harris; Lester Hollis;
Edward Holmes; John L. Hughes; Richard Hunter; Marion
Legare; Frederick Mars; Oneis McNeil; Lloyd A. Meacham;
Roy Meredith; Thomas A. Mullins; Robert Pack; James
Proctor; Lemoria Robertson; Angelo Robinson; Will A.
Robinson; Robert Singletary; Paul T. Sledge; Ronald
Walker; Ezra Wallace; and Isaac Watson, Plaintiffs,
v.
The INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN
OF TOLEDO, OHIO, LOCAL UNION NO. 3; Bricklayers Joint
Apprenticeship Committee; Associated Building Contractors
of Northwestern Ohio, Inc., and Mason Contractors
Association of Toledo, Ohio, Inc.; A.C. Leadbetter & Son,
Inc.; Mosser Construction, Inc.; Rudolph/Libbe, Inc.; and
Barton-Tattersall, Inc, Defendants-Appellees,
Toledo Area Hometown Plan and the Administrative Committee;
S.A. Storer & Sons, Co.; and Vesta Construction,
Defendants.
 Nos. 87-3930, 87-3948.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1990.
 
 Before BOGGS, Circuit Judge, ENGEL,* Senior Circuit Judge, and BENJAMIN F. GIBSON,** District Judge.
 ENGEL, Senior Circuit Judge.
 
 
 1
 Plaintiffs in the litigation below are twenty-nine black men who were or wished to be journeyman bricklayers in the Toledo, Ohio area. They seek to appeal several orders of the district court dismissing their race discrimination claims and denying their motion to amend the complaint to add a class action claim. The defendants initially included Local Union No. 3 of the International Union of Bricklayers and Allied Craftsmen ("Union"), the Union's Joint Apprenticeship Committee ("Apprenticeship Committee"), two contractors' associations,[1] the Toledo Hometown Plan ("Plan") and six masonry and general contractors. Respondents in the present appeal, however, include only the Union, the Apprenticeship Committee, the contractors' associations and four of the construction companies: Mosser Construction, Rudolph/Libbe, Inc., Barton-Tattersall, Inc., and A.C. Leadbetter & Son, Inc. (Mosser, Rudolph, Barton, and Leadbetter). The plaintiffs voluntarily dismissed the Plan, S.A. Storer & Sons, Co., and Vesta Construction from the action in the district court.
 
 
 2
 On August 8, 1985, the bricklayers filed a complaint in the United States District Court for the Northern District of Ohio. The plaintiffs' complaint contained four counts: (1) the Plan and the contractors' associations conspired to deprive the plaintiffs of their civil rights in violation of 42 U.S.C. Sec. 1985(3); (2) the Plan and the contractors' associations conspired to interfere with the plaintiffs' access to federal court in violation of 42 U.S.C. Sec. 1985(2); (3) the defendants discriminated against the plaintiffs on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq.; and (4) the defendants purposely discriminated against the plaintiffs on the basis of race in violation of 42 U.S.C. Sec. 1981.
 
 
 3
 The defendants filed numerous motions in the district court, many of which were unopposed. The district court dismissed the claims against all of the defendants in orders dated June 18, 1986, July 14, 1986, January 16, 1987, August 13, 1987, and September 9, 1987. On appeal, plaintiffs seek to raise six issues: (1) the district court erred in dismissing the claims against the contractors' associations and Leadbetter for failure to prosecute; (2) the district court erred in finding that plaintiffs did not state claims under sections 1985(3) and 1985(2) against the defendants, including defendants who were not named in these allegations, such as the Union and the contractors; (3) the district court erred when it held under Ohio law that the section 1981 claims of three deceased plaintiffs abated;[2] (4) the district court erred in finding that the plaintiffs did not make out a prima facie case under Title VII and section 1981; (5) the district court applied the wrong statute of limitations to their section 1981 claims; and (6) the district court erred in denying a motion to amend their complaint to add a class action claim.
 
 
 4
 After plaintiffs' brief was filed in this appeal, the four general contractors moved to dismiss the appeals of all the plaintiffs, except Lonnie R. Alsup, on the ground that these plaintiffs were not designated in the notice of appeal. In a separate motion, the contractors' associations and Leadbetter moved to dismiss for lack of jurisdiction over them on the ground that the plaintiffs abandoned an appeal as to them. These motions were referred to this panel assigned to hear the case.
 
 
 5
 Our decision on the motion to dismiss the appeal as it pertains to all plaintiffs except Lonnie R. Alsup was delayed pending our court's en banc consideration of this same issue. That decision, Minority Employees v. State of Tennessee, No. 88-5429, slip op. (6th Cir., filed April 26, 1990) (en banc ), has now issued and is plainly controlling here upon identical facts. In short, Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405 (1988), as interpreted by our en banc decision, mandates that the motion be granted and the appeal dismissed as to all plaintiffs except Alsup. We therefore proceed to address only the issues on appeal that relate to Alsup and the trial court's dismissal of the suit as applied to him. For the reasons stated below, we affirm the district court's dismissal of Alsup's claims against the defendants.
 
 
 6
 A. Claims Against the Apprenticeship Committee, Mosser, Rudolph and Barton.
 
 
 7
 Alsup acknowledges that he has no discrimination claims against some of the defendants. In his deposition testimony, Alsup acknowledges that he has no claims against the Apprenticeship Committee. (Alsup Deposition at 20) (Memorandum and Order of September 9, 1987 at 9). Alsup also acknowledges that he has no claims against Mosser, Rudolph, or Barton. (Alsup Deposition at 55-56, 62-63, 66) (Memorandum and Order of August 13, 1987 at 13). The district court did not err in granting motions dismissing Alsup's claims against these defendants and we need not address alternative arguments for affirmance.
 
 
 8
 B. Claims Against the Contractors' Associations and Leadbetter.
 
 
 9
 The district court dismissed the claims against the contractors' associations and Leadbetter for want of prosecution.[3] On September 13, 1985, the contractors' associations filed a motion to dismiss or, in the alternative, for summary judgment. They argued, inter alia, that plaintiffs failed to state a cognizable claim and that the complaint was altogether lacking in sufficient particularity. By its orders of October 28, 1985 and November 19, 1985, the district court granted several requests for an extension of time within which plaintiffs could respond to the motion. On June 18, 1986, the district court entered an order dismissing the contractors' associations as defendants because the plaintiffs failed to respond to their motion to dismiss and failed to request a further extension. The district court concluded that plaintiffs' failure over a nine-month period to oppose the dismissal motion warranted dismissal without prejudice under Fed.R.Civ.P. 41(b) for failure to prosecute. (Memorandum and Order of June 18, 1986 at 16).
 
 
 10
 On November 4, 1986, Leadbetter filed a motion in the district court for summary judgment, arguing that some of the plaintiffs had admitted that they had not applied for employment at Leadbetter and, therefore, could not state a prima facie case of employment discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Leadbetter further argued that none of the plaintiffs could make out such a prima facie case. Plaintiffs failed to respond to this motion and the claims against Leadbetter were dismissed under Fed.R.Civ.P. 41(b) for failure to prosecute. (Memorandum and Order of January 16, 1987 at 1-2).
 
 
 11
 After Alsup's brief was filed in this case, the contractors' associations and Leadbetter moved to dismiss the appeal as to them on the ground that the brief did not raise or address issues pertaining to them. In separate motions, the defendants argued that Alsup's brief did not argue that the district court erred in granting these motions and dismissing them for want of prosecution, did not discuss the district court's grounds for entering the orders, and did not cite authorities in opposition to the orders. The motions of the contractors' associations and Leadbetter were referred to this hearing panel, which requested additional briefing on these issues. Although there is some question under Fed.R.App.P. 28(a) as to whether these issues are properly before this panel in light of the failure to raise these issues in the initial brief, we have addressed Alsup's arguments and find them without merit.
 
 
 12
 In Link v. Wabash Railroad Co., 370 U.S. 626, 630 (1962), the Supreme Court concluded that district courts retain an "inherent power" to dismiss actions or claims sua sponte for lack of prosecution under Rule 41(b). Although Alsup attempts to distinguish the degree of noncompliance in this case with that in Link, Alsup does not argue that he has suffered any prejudice by the dismissal of the claims against these defendants nor has he given any reasons for the noncompliance. In short, Alsup presents nothing in the record to demonstrate that the district court abused its discretion. We conclude that the district court did not err in dismissing the claims against these defendants for failure to prosecute. We therefore need not rely upon alternative arguments for affirming on particular claims.[4]
 
 
 13
 C. Claims against the Union.
 
 
 14
 1. Claims under 42 U.S.C. Sec. 1985.
 
 
 15
 The remaining defendant in this appeal is the Union. The district court dismissed Alsup's section 1985 claims against the Union because the complaint lacked specific allegations against the Union. (Memorandum and Order of September 9, 1987 at 4).
 
 
 16
 Count I of the complaint purports to state a claim under section 1985(3):
 
 COUNT 1--CAUSE OF ACTION
 42 U.S.C. Section 1985(3)
 
 17
 44. The defendant Contractors Associations, the Administrative Committee and Executive Director of the Toledo Area Hometown Plan have entered into a conspiracy for the purpose of depriving blacks of their civil rights and privileges as citizens of the United States. Since 1977 the Contractors Association has financed the Hometown Plan and paid the salaries of its employees. Under the plan individual contractors submit a monthly statistical profile of their workforce including those contractors who have government contracts to the Executive Director of the Hometown Plan. The Administrative Committee's function is to monitor and enforce the Department of Labor's guidelines but it has failed to do so. Despite the knowledge that all mason contractors are discriminating in employment, the Administrative Committee and its Director has failed to inform the OFCCP of the underutilization of blacks and has failed to recommend that any sanctions be taken against the contractors. The result of this conspiracy by the Contractors Associations and the Administrative Committee has been to injure blacks, union members, and potential black applicants to the exercise of their civil rights and privileges as citizens of the United States.
 
 
 18
 The district court concluded that Count I failed "adequately [to] allege with particularity the necessary elements of conspiracy and invidiously discriminating actions[.]" (Memorandum and Order of September 9, 1987 at 4). Under the pleading requirements set forth in Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971), and discussed by the district court below, Alsup's section 1985(3) claim fails to allege with particularity and, in fact, makes no mention of any role by the Union.
 
 
 19
 Alsup also purports to state a section 1985(2) claim against the Union under Count II. Count II of the complaint states:
 
 COUNT II--CAUSE OF ACTION
 42 U.S.C. SECTION 1985(2)
 
 20
 45. The Contractors Associations and the Administrative Committee of the Toledo Area Hometown Plan by secreting all the contractors EEO reports showing underutilization and violations of Executive Order No. 11246, Title VII and 42 U.S.C. Section 1981, have interfered with the access by blacks to the federal court.
 
 
 21
 The district court similarly did not err in dismissing the claims against the Union under Count II for failure to allege with particularity the necessary elements of conspiracy.[5] The failure most obviously is manifested by the failure to allege any role by the Union in such a conspiracy. It is clear, therefore, that Alsup's section 1985 claims contain broad conclusory language that is devoid of the factual allegations necessary to support a conspiracy theory. See Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir.1987); Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir.1984).
 
 
 22
 2. Title VII claims.
 
 
 23
 The district court dismissed Alsup's Title VII claims against the Union on the ground that they were untimely filed. (Memorandum and Order of July 14, 1986 at 1-2). In its memorandum and order granting the Union's unopposed motion for summary judgment on the Title VII claims, the district court concluded that the undisputed facts indicated that Alsup failed to bring suit within ninety days of receiving a right-to-sue notice from the Equal Employment Opportunity Commission, pursuant to 42 U.S.C. Sec. 2000e-5(f)(1). Alsup received his right-to-sue letter on May 7, 1985, but this action was not initiated until August 8, 1985. We conclude that the district court did not err in finding that there were no grounds for equitable tolling.
 
 
 24
 3. Claims under 42 U.S.C. Sec. 1981.
 
 
 25
 The district court dismissed Alsup's section 1981 claims against the Union as barred by Ohio's one-year statute of limitations. In Demery v. City of Youngstown, 818 F.2d 1257 (6th Cir.1987), we held that the correct statute of limitations in Ohio for a section 1981 action was one year, which was applied retroactively to bar that plaintiff's claim. On rehearing in Demery, however, the panel concluded that Demery should not apply retroactively in light of intervening Supreme Court authority and because this court prior to Demery had held that Ohio's six-year statute of limitations applied to such a claim. 818 F.2d at 1264. The district court in this case, however, applied Demery retroactively to bar Alsup's claim, which purportedly arose in 1982. (Memorandum and Order of September 9, 1987 at 9). Although the district court erred in applying Demery retroactively,[6] we conclude that the district court's error was harmless since Alsup failed to make out a prima facie case of discrimination under section 1981.
 
 
 26
 In Alsup's deposition testimony, he claims that there are two incidents that demonstrate racial discrimination. He describes one incident in 1982 where several Union members threatened to "blackball" him while he was on a jobsite in Bowling Green, Ohio. (Alsup Deposition at 20-24). According to his deposition testimony, Alsup was "about two months" behind in his dues when a Union representative came to his worksite and told him to leave work to go pay his dues. He states in his deposition that he replied that he would do so after work, but that the Union members he was working with stated that he "was going to get blackballed" if he did not leave at that time to pay his dues. Alsup answered the following question in his deposition:
 
 
 27
 Q. If I can cut through this, Mr. Alsup, what you are saying is that you're assuming that because you were black you were told to come back here to pay your dues; is that it?
 
 
 28
 A. Oh, yeah, yeah.
 
 
 29
 (Alsup Deposition at 23-24).
 
 
 30
 The second incident involved a $150 fine levied by the Union in 1982 because Alsup crossed a Union picket line to work for a non-Union job. He does not appear to claim that the fine itself was discriminatory, but he does complain that he received a larger fine than others for the same incident. He admits, however, that both blacks and whites who were also involved received a lower $50 fine. He also states in his deposition that no one told him he was being fined because he was black and he denies knowledge that anyone else was told that this was the reason for the fine. Alsup also admits that he never appealed the decision nor filed a grievance with the Union. (Alsup Deposition at 63).
 
 
 31
 There is nothing in either of these incidents to suggest racial discrimination. Aside from his subjective belief that these incidents were racially motivated, Alsup has failed to produce any evidence of racial animus or discriminatory purpose, a necessary element of a section 1981 claim. See General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982). A plaintiff's mere conclusory statements regarding alleged discrimination, unsubstantiated by a specific showing to raise a genuine issue for trial, are insufficient to survive a motion for summary judgment. See Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69-70 (6th Cir.1982). Alsup has failed to present any evidence concerning an important element of his section 1981 race discrimination claim--that he was treated differently from similarly situated whites.[7]
 
 
 32
 Finally, Alsup pins primary reliance upon Goodman v. Lukens Steel Co., 482 U.S. 656 (1987), for his section 1981 claims. In Goodman, the Supreme Court stated that a union may be liable under section 1981 where the union refuses to assert racial discrimination as a ground for grievances. 487 U.S. at 669. Alsup admits, however, that he did not file a grievance through the Union on either incident based upon his belief that he was being discriminated against because of race. In short, the district court did not err in dismissing Alsup's section 1981 claims.
 
 
 33
 D. Motion to Amend.
 
 
 34
 Alsup next contends that the district court erred in denying his motion to amend the complaint to add class action allegations. A decision whether to grant or deny leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure is entrusted to the sound discretion of the trial court. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); cf. Kentucky Educators Public Affairs Council v. Kentucky Registry of Election Finance, 677 F.2d 1125, 1135 (6th Cir.1982) (district courts have broad discretion in deciding whether an action may be maintained as a class action).
 
 
 35
 The district court articulated several reasons for denying Alsup's motion, including: (1) the plaintiffs failed to comply with Fed.R.Civ.P. 7(b)(1), requiring a movant to state with particularity the grounds for the motion; (2) that at the time the lawsuit was filed, the plaintiffs clearly knew or should have known the facts upon which the proposed amendment was based; (3) the proposed amendment would be unduly prejudicial to the defendants and the denial of the amendment would result in a de minimis injustice to the plaintiffs; and (4) the plaintiffs made no attempt to satisfy their burden of demonstrating the existence of class members other than the named plaintiffs. The district court also was persuaded by the status of this case and the progress of two related pending cases, where similar motions had been denied. Based upon the foregoing, the district court's decision was not an abuse of discretion. Further, on appeal, Alsup has not asserted any argument as to why the district court's analysis is incorrect or constitutes an abuse of discretion nor has he presented reasons why the action should be certified as a class action pursuant to Fed.R.Civ.P. 23.
 
 
 36
 Accordingly, the judgments of the district court with respect to Lonnie R. Alsup are AFFIRMED. The appeal insofar as it purports to include the remaining twenty-eight plaintiffs is DISMISSED for want of jurisdiction.
 
 
 
 *
 Honorable Albert J. Engel assumed senior status on October 1, 1989
 
 
 **
 Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Associated Building Contractors of Northwestern Ohio, Inc., and Mason Contractors Association of Toledo, Ohio, Inc
 
 
 [2]
 Oneis McNeil, Robert Pack, and Robert Singletary
 
 
 [3]
 In the district court's June 18, 1986 Memorandum and Order dismissing the contractors' associations, the court specifically stated that the dismissal was without prejudice. (Memorandum and Order of June 18, 1986 at 16). The January 16, 1987 dismissal of Leadbetter, however, does not indicate that the dismissal was without prejudice. Fed.R.Civ.P. 41(b) provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under [Rule 41] ... operates as an adjudication on the merits." The dismissal of Leadbetter is therefore with prejudice
 
 
 [4]
 As demonstrated below, Alsup's section 1985 claims are not alleged with sufficient particularity. Alsup's Title VII claims also were untimely filed. Further, Alsup has failed to make out a prima facie case of discrimination for either the Title VII or section 1981 claims against these defendants. In fact, in his deposition testimony Alsup does not mention the contractors' associations or Leadbetter as a source of discrimination to him. Appellate counsel similarly was unable to articulate a basis for Alsup's discrimination claims at oral argument
 
 
 [5]
 Alsup also has not alleged a nexus between the alleged conspiracy and a proceeding in federal court. See Bradt v. Smith, 634 F.2d 796, 801 (5th Cir.1981); Brawer v. Horowitz, 535 F.2d 830, 840 (3rd Cir.1976); cf. Rode v. Dellarciprete, 845 F.2d 1195, 1206-07 (3rd Cir.1988)
 
 
 [6]
 Since Demery, the statute of limitations issue in Ohio has been further complicated. Our en banc court recently held that Ohio's two-year statute of limitations applies to section 1983 claims. See Browning v. Pendleton, 869 F.2d 989 (6th Cir.1989) (en banc ). In an unpublished opinion, a panel of this court similarly indicated that the two-year statute of limitations contained in Ohio Rev.Code Ann. Sec. 2305.10 applies to section 1981 claims in Ohio. See Crawford v. Broadview Savings and Loan Co., 878 F.2d 1436 (6th Cir.1989) (table). This recent development does not affect our above conclusions
 
 
 [7]
 We also note that even if Alsup's Title VII action had been timely filed, he similarly would have failed to demonstrate a prima facie case under that statute since liability under Title VII and section 1981 rests on the same proof. See Cooper v. City of North Olmsted, 795 F.2d 1265, 1270 n. 3 (6th Cir.1986); Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 378 (6th Cir.1984)